reports were current similar to those published would not aid the defendant upon the trial unless they had come to his ears, and he had believed them to be true and published them accordingly. If the defendant proved all the facts set forth in the defense, the trial court would not be justified in submitting them as mitigating circumstances to the jury, for they would lack the element of defendant having heard the reports and his belief in their truth. "Mitigating circumstances are those which, while not proving the truth of the charge, do yet tend in some appreciable degree towards such proof, and thus permit of an inference that defendant was not actuated by malice in his charge. They must be of such a nature as to show that defendant, though mistaken, believed the charge to be true when it was made." Mattice v. Wilcox, 147 N. Y. 634, 42 N. E. 270. The demurrer in Morse v. Press Publishing Co., 63 App. Div. 61, 71 N. Y. Supp. 348, was overruled because a portion of the answer alleged facts which tended to mitigate damages. None of the facts here alleged tend in mitigation, because of defendant's lack of knowledge and belief in the truth of the rumors. The allegation that publication was made in good faith as matter of news does not, we think, meet the requirement of knowledge and belief.

The interlocutory judgment overruling the demurrer must be reversed, with costs, and the demurrer sustained, with costs, with the usual leave to plead over on payment of costs of the trial court and of appeal. All concur.

---

### GUARIELLO v. UNION RY. CO. OF NEW YORK CITY.

(Supreme Court, Trial Term, New York County. July, 1905.)

1. **STREET RAILROADS—OPERATION OF CARS—CONTROL OF PASSENGERS.**
   Where the seats of a street car are occupied and a passenger is obliged to stand on the running board, the conductor has no right to compel the passenger to change his position so as not to stand in front of some passenger.

2. **SAME—ASSAULT BY CONDUCTOR —EVIDENCE.**
   Evidence in an action against a street railway company for an assault committed by its conductor on a passenger examined, and *held* not sufficient to support a verdict for the passenger.

Action by Nazzarino Guariello against the Union Railway Company of New York City. On motion to set aside the verdict for plaintiff as against the weight of the evidence. Granted.

Palmieri & Wechsler, for plaintiff.

James L. Quackenbush (John V. Bouvier, Jr., of counsel), for defendant.

COCHRANE, J. Plaintiff has a verdict for $20,000 for an assault committed by one of the defendant's street railway conductors while the plaintiff was a passenger on a street car of the defendant in charge of such conductor. Some time after the commencement of this action, a second action was brought by plaintiff to recover damages for the same injuries, for which a recovery has been had

herein, which second action was based on the alleged negligence of "defendant, its agents, servants, and employés in charge of said car," but without otherwise alleging any specific act against the conductor. The present action was tried by the attorney who brought the second action, and the plaintiff testified he knew of but one action, and knew nothing of the attorney who brought the present action.

The plaintiff's version of the occurrence is that he was standing on the floor of the car near the right edge thereof, the car being an open one, and there being no unoccupied seats; that he paid his fare to the conductor, and took a transfer; that the conductor went to the forward part of the car, and returned after the car had gone about two blocks; that the car was then going very fast; and that the conductor, standing on the running board and holding onto the car with his left hand, seized with his right hand the right arm of the plaintiff, and gave him a pull which caused him to fall from the car, the wheels of which ran over his right foot and right hand, necessitating amputation thereof. Unless this pull was unusually strong or violent, it may be observed at the outset that this description of the occurrence as given by the plaintiff presents some physical difficulties, inasmuch as it is not apparent why the plaintiff could not have protected or recovered himself by some movement on his part which would have been almost involuntary and instinctive. He held in his left hand at the time what he called a "small valise," used by him for carrying his luncheon when away from home and at work. But this was not of such a character as to constitute any impediment to his ability for self-protection.

Two companions accompanied the plaintiff, and stood in the car behind where he was standing. One of these was called by him as a witness. His description of the alleged assault varies from that of the plaintiff in the following essential particular: As indicated by him, and according to his illustration given to the jury, the conductor, standing on the running board, seized the plaintiff with both hands, and with much force threw or thrust him from the moving car. The other of the plaintiff's companions was not called by him as a witness; neither was the conductor of the car called by the defendant as a witness. At the time of the trial the former was in Italy; the latter was in Ireland, ill with consumption.

We have here presented not merely a technical assault, followed by consequences of a most serious character, for which, even though not expected by the conductor, the defendant might be responsible; but the facts, as testified to by the plaintiff and his witness, indicate a malicious design and intent on the part of the conductor to forcibly eject the plaintiff from a rapidly moving electric car. There can be no mistaking his purpose. If the testimony of the plaintiff and his witness is true, the conductor manifested a reckless and wanton disregard of the plaintiff's life and physical well-being. He intended to throw the plaintiff from the car, and that "the plaintiff was thrown" from the car is the allegation in the complaint. An assault so vicious, so inhuman, and so unnatural

needs a motive to give it plausibility. Without some motive, it would not for one moment appeal to the credence of any thoughtful person.

The plaintiff, realizing the importance of a motive, sought to supply one. According to the testimony of himself and his witness, two Sisters of Charity were occupying the seat directly behind where the plaintiff was standing, and on the right side of the car. When the conductor collected the plaintiff's fare, according to the plaintiff's version and that of his witness, he told the plaintiff to remove from in front of the Sisters. The plaintiff failed to do so. They testified that when the conductor returned and committed the assault he simultaneously therewith repeated his command to the plaintiff to remove from in front of the Sisters. In other words, the theory of the plaintiff is that the conductor, out of respect for the rights of the Sisters, disrespected the rights of the plaintiff and of the other passengers. The car being full, plaintiff was obliged to stand in front of some passenger, and a direction by the conductor to the plaintiff not to stand before the Sisters, while exceedingly commendable to his deference and chivalry to these ladies of a highly respected religious order, was nevertheless a discrimination against the other passengers, before some of whom plaintiff had necessarily to take a standing position. This command, if given, was not one which the plaintiff was bound to obey, because of its unlawfulness and impropriety. And, because of its unlawfulness and impropriety, it is as improbable that such command was given as is the existence of the assault itself. But did the plaintiff prove any such command? Both the plaintiff and his witness are Italians, neither of whom at the time of the trial, nine months after the accident, could give his testimony except through an interpreter. The plaintiff admits that he did not understand that such directions were given him by the conductor. His witness testified to having understood such a command to have been given. Considering, however, the almost absolute ignorance of the English language manifested by the witness on the trial, I cannot credit his statement that he understood the words of the conductor, and I am constrained to regard this branch of the plaintiff's case as entirely unestablished by the preponderance of evidence. No probative force can be attached to the evidence either of the plaintiff or of his witness to the effect that the conductor had directed plaintiff to cease standing in front of the Sisters of Charity, and that the failure of the plaintiff to do so excited the indignation of the conductor, and constituted the motive for his malicious attack on the plaintiff. Yet this feature of the case was kept before the jury as if it had been established by the most convincing evidence.

The theory of the defendant was that the plaintiff stood on the running board of the car, and, losing his balance as the car was in motion, fell therefrom. To prove this theory, the defendant called three disinterested witnesses. These witnesses were members of one family, a mother and two daughters. But there is nothing to indicate any effort on their part to harmonize their testimony,.

·or that any one of them testified with reference to the testimony given by either of the others. They impressed me as being intelligent and candid. They all saw the plaintiff standing on·'the running board. Although only one of them claimed to see the plaintiff while in the act of falling, all three testified clearly and positively that at the time of the accident the conductor was in the forward part of the car at a place where the plaintiff was inaccessible to him; and they all further testified that the Sisters of Charity were seated at the extreme left of the car, and not at the extreme right, as the plaintiff testified. The mother, under a prolonged and rigid cross-examination, was somewhat confused in some parts ·of her testimony; but as to the position of the conductor at the time of the occurrence, and the position of the Sisters of Charity, she manifested no confusion whatever. The position of the conductor at the time when the plaintiff fell from the car is the crucial point in the case, and as to this point these three witnesses testified with clearness and positiveness.

As against the testimony of these three disinterested witnesses, and as against the inherent improbability of the plaintiff's case, I do not think this verdict should be permitted to stand. The attempt of the plaintiff to prove a motive for the act of the conductor was abortive. The plaintiff and his witness, owing to their ignorance of the English language, could not testify as to anything said by the conductor, although the plaintiff's witness claimed on the trial to have understood him. Such testimony, if true, was highly important, because it furnished the motive for the assault. Such testimony, however, is irreconcilably at war with the fact. The alleged fact is absolutely unproven. But it was given undue prominence at the trial. I feel confident from the course of the trial, and from the atmosphere which surrounded the case during the trial, that the jury were unduly prejudiced by this testimony against the defendant. When a verdict is reached through passion or prejudice, it should be set aside. Justice requires that the facts of this case should be submitted to another jury.

Verdict set aside, and new trial granted, on payment by the defendant of the trial fee and trial disbursements.